UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HEATHER AMRO, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>MENU FOODS INCOME FUND, MENU FOODS, INC., a New Jersey corporation, MENU FOODS HOLDINGS, INC., MENU FOODS MIDWEST CORPORATION, a Delaware corporation, CHEMNUTRA INC., a Delaware corporation, CHEMNUTRA LLC, THE PROCTOR & GAMBLE COMPANY, an Ohio corporation and THE IAMS COMPANY,<br><br>              Defendants. | 07CV2162<br>JUDGE DARRAH<br>MAGISTRATE JUDGE MASON<br><br>JURY TRIAL DEMANDED<br><br>FILED<br>APR 18 2007<br>APR 18, 2007<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

### CLASS ACTION COMPLAINT

Plaintiff Heather Amro, individually and on behalf of all others similarly situated, by her attorneys, alleges upon information and belief, as follows:

### NATURE OF CASE

1.    Plaintiff brings this class action on behalf of herself and a class of consumers and entities who purchased brands of "cuts and gravy style" dog and cat food manufactured by Menu Foods Income Fund, Menu Foods Holdings, Inc. and Menu Foods, Inc., and Menu Foods Midwest Corporation, and supplied by ChemNutra, Inc. and ChemNutra, LLC, and marketed, distributed and sold by The Proctor & Gamble Company and The Iams Company ("Defendants' Pet Food Products") that caused pets to suffer severe illness or death. Pet owners, believing Defendants' Pet Food Products to be safe for pet consumption, incurred substantial expenses relating to the purchase of the pet food and the veterinary monitoring and treatment that became necessary after their pets consumed Defendants' Pet Food Products. These expenses were even

more extreme for those pet owners whose pets became terminally ill after consuming Defendants' Pet Food Products. Such costs arose and were exacerbated by the undue amount of time taken by Defendants to announce the dangers associated with its dog and cat foods. Although Defendants knew that pet illnesses and deaths could be related to their Pet Food Products, Defendants waited for nearly a month before telling the public and the Food and Drug Administration (FDA) that it was recalling its products. Defendants' lethal Pet Food Products, and the companies' excessive delay in warning consumers and regulatory agencies of their dangers, resulted in significant financial loss to thousands of pet owners.

## JURISDICTION AND VENUE

2. The Court has original jurisdiction over this class action pursuant to 28 U.S.C. §1332(d)(2).

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

4. The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

## PARTIES

5. Plaintiff Heather Amro is a resident of Cook County, Illinois.

6. Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

7. Defendant Menu Foods Holdings, Inc. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware.

8. Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. Menu Foods, Inc. is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

9. Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

10. Defendant ChemNutra Inc. is a Delaware corporation that maintains its principal place of business in Las Vegas, Nevada.

11. Defendant ChemNutra LLC is a Chinese company with its principal executive offices located at Hangzhou, hz, Zhejiang, China 310030.

12. Defendant The Procter & Gamble Company, which acquired, and does business as The Iams Company, is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

13. Defendant The Iams Company is a corporation with its principle place of business in the State of Ohio.

14. Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods, Inc., Menu Foods Midwest Corporation, ChemNutra Inc., ChemNutra LLC, The Proctor & Gamble Company and The Iams Company are collectively referenced as "Defendants."

15. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents,

3

principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

## FACTUAL ALLEGATIONS

16.     Defendants manufacture and sell pet food internationally and are the biggest suppliers of pet food in North America.

17.     Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

18.     Defendants sell their brands internationally and in some of the largest major retail chains in the United States, such as Wal-Mart, Safeway, Kroger, PetSmart and Meijer.

19.     On March 16, 2007, Defendants, in conjunction with the Food and Drug Administration (FDA), announced a massive immediate recall of approximately 60 million containers of "cuts and gravy" pet food (pet food consisting of pieces of meat in gravy) throughout the United States based on widespread reports of pet illness and death, mostly related to kidney failure. The recall covers all "cuts and gravy" wet pet food produced and distributed by Defendants, including over ninety different brands of dog and cat food. Some of the brands recalled include, Iams, Eukanuba, Best Choice, Paws, and Nutro Max. Defendants' recall is the largest pet food recall in United States history.

20.     However, Defendants waited an excessive period of time before deciding to recall its harmful and lethal products. Defendants first started receiving complaints of pet illnesses and deaths as early as late-February, almost a full month before deciding to recall their products. *See, e.g.*, CBSNews.com, *Pet Food Co. Knew of Problem Last Month*, March 20, 2007, *at* http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last viewed March

4

22, 2007). Rather than announcing their products could be harmful to pets as soon as they learned of pet illnesses and deaths, Defendants decided to conduct their own testing. Defendants conducted tests involving over 50 animals to observe reactions to their pet foods. Approximately one in six of the animals tested died. Yet, Defendants again waited until as many as seven test subjects died after eating their pet food before finally submitting their findings to the FDA and deciding that a recall and announcement to the public would be necessary.

21.     Due in no small part to this unnecessary and protracted delay, as of March 21, 2007 there have been at least seventy-two reported pet deaths from kidney failure nationwide and additional deaths continue to be reported by the hour. One source indicated that 1,715 dogs and cats were either sick or dead as a result of the recalled food products. *See* http://www.petconnection.com/blog/ (last viewed March 22, 2007).

22.     Pet owners purchased Defendants' products believing them to be safe for pet consumption and beneficial to their pets. However, the "cuts and gravy" style pet food that pet owners across the nation have fed their pets has proved to be toxic, causing renal failure in cats and dogs as well as physical disorders such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

23.     Pet owners have incurred substantial expenses relating both to the purchase of Defendants' pet food and from the medical costs associated with monitoring and treating pets who have consumed, or were thought to have consumed, Defendants' contaminated food products. Indeed, several pet owners have incurred veterinary bills that have climbed into the several thousands of dollars. Furthermore, for those pet owners whose pets became terminally ill, they were forced to incur additional costs relating to their pets death, such as euthanizing and, for some, burying or cremating their pet.

24. In addition, pet owners who have become increasingly concerned about their pet's health after learning of the recall have received little to no relief from Defendants. Defendants have failed to manage the high volume of incoming complaints. Since instituting the recall, pet owners have been largely unable to reach Defendants' customer service representatives, often encountering busy signals or voicemail messages. *See, e.g.*, Thejournalnews.com, *Pet Owners Growling over Food Recall*, March 20, 2007, *at* http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS01/70320034 5/1066 (last viewed March 22, 2007). To be sure, Defendants have been criticized for not being cooperative with customers, for not getting helpful information out to the public sooner and for failing to "get control of the crisis . . . employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, The Star-Ledger, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available at* http://www.nj.com/starledger/stories/index.ssf?/base/business-6/117445554784980.xml&coll=1 (last viewed March 23, 2007).

25. Since the recall, Defendants have received scores of complaints and questions from consumers who have purchased its contaminated pet food products and from those whose pets have become ill or died after consuming those products.

26. The complaints found throughout the Internet and in many of the news stories mentioned above each contain the same common theme of consumers who unwittingly purchased Defendants' food products and who were forced to take their pets to veterinarians for medical treatment after their pets became extremely, and sometimes terminally ill.

27. Plaintiff Heather Amro purchased and fed *Iams Select Bites Pouches* brand wet pet food to her cat, Zelda. *Iams Select Bites Pouches* is a brand of cat food recalled by Defendants.

6

28. After eating the cat food, Zelda became noticeably ill. Ms. Amro admitted Zelda to a veterinarian for diagnosis and treatment, where it was discovered that Zelda was suffering from kidney failure.

29. Despite the veterinarian's best efforts during treatment, on March 20, 2007, Zelda was euthanized as a result of her kidney failure.

30. Zelda's diagnosis, treatment and euthanization cost Ms. Amro over $400.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of herself and all others similarly situated as members of the following class (the "Class"): All persons and entities that purchased recalled dog or cat food exported, imported, manufactured, distributed, marketed and/or sold by Defendants.

32. Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint. Specifically excluded are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

33. **Numerosity**. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class contains tens of thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by Defendants, however,

7

and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

34. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

    b. Whether Defendants failed to properly test their pet food before market entry of such food;

    c. Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of their pet food;

    d. Whether Defendants' recall is adequate and properly notifies potentially affected consumers;

    e. Whether Defendants have been unjustly enriched as a result of their conduct, as alleged herein; and

    f. Whether Plaintiff and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages.

35. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff and each member of the Class purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

36. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

37. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

38. In the alternative, the Class may be certified because:

    a.  the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

9

    b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    c.    Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

39. Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

40. Defendants benefited from the sale of their "cuts and gravy" style dog and cat food to Plaintiff and the Class. The benefit to Defendants can be identified from the sale of such pet food to Plaintiff and the Class and that such monies can be restored to Plaintiff and the Class. Such monies are the property of the Plaintiff and the Class. All or a portion of this benefit retained by Defendants is money in which Plaintiff and the Class have an ownership interest. Plaintiff and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF
### [Negligence]

41. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

42. Defendants owed a duty to Plaintiff and the Class to provide pet food safe and suitable for pet consumption.

10

43. Through their failure to exercise due care, Defendants were grossly negligent in manufacturing, distributing, marketing and selling pet food to Plaintiff and the Class.

44. Defendants failed to implement adequate quality control and adequate testing of its pet food that they introduced into the stream of commerce for sale to Plaintiff and the Class and for consumption by their pets.

45. Defendants knew, or should have known, for nearly a month prior to the products recall, that their pet food presented an unreasonable and unacceptable risk of injury or death to pets, and would result in foresecable and avoidable damage.

46. The losses and damages described herein were foreseeable and avoidable.

47. Defendants' gross negligence proximately caused the losses and damages to Plaintiff and the Class.

48. Punitive damages are appropriate against every Defendant because of their gross negligence and reckless disregard of their duties to Plaintiff and the Class, and because of the need to punish and deter Defendants from future misconduct.

## SECOND CLAIM FOR RELIEF
### [For Unjust Enrichment]

49. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

50. Defendants have received, and continue to receive, a benefit at the expense of Plaintiff and members of the Class. Defendants have knowledge of this benefit.

51. Defendants have charged and collected from consumers, including Plaintiff and members of the Class, money for dog and cat food that endangers the lives of their pets.

Defendants thus have received benefits that they have unjustly retained at the expense of Plaintiff and members of the Class.

52. As a direct and proximate result of Defendants' unlawful acts and conduct, Plaintiff and members of the Class were deprived of the use of their monies that was unlawfully charged and collected by Defendants, and are therefore entitled to restoration of their monies.

### THIRD CLAIM FOR RELIEF
### [Breach Of Express Warranty]

53. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

54. Defendants expressly warranted that their pet food was suitable and safe for pet consumption.

55. Defendants also expressly warranted that their pet food had "the highest standards of quality."

56. Plaintiff and the Class were induced by Defendants' marketing, advertising, promotion and labeling of the pet food as suitable "food" to rely upon such express warranty, and, in fact, relied upon the untrue warranty in purchasing the recalled pet food and feeding it to their pets.

57. Plaintiff and the Class were damaged as a proximate result of Defendants' breach of their express warranty.

### FOURTH CLAIM FOR RELIEF
### [Breach Of Implied Warranty]

58. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

59. Defendants are merchants under section 2-104 and 2-314 of the Uniform Commercial Code.

60. Through their marketing, advertising, promotion and labeling of their pet food, Defendants impliedly warranted that such pet food was fit for the ordinary purpose for which it was intended, including to safely nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform Commercial Code.

61. Through their marketing, advertising, promotion and labeling, Defendants knew that Plaintiff and the Class would purchase their pet food for the ordinary purpose of providing nourishment to their pets.

62. Defendants manufactured, distributed, marketed, advertised, promoted and sole their pet food for the ordinary purpose for which it was purchased by Plaintiff and the Class.

63. Plaintiff and the Class relied upon Defendants' representations and warranties, and purchased and used Defendants' pet food for the ordinary purpose for which it was sold.

64. Defendants' pet food purchased by Plaintiff and the Class were unfit for their ordinary purpose when sold. Such food was sold while presenting a risk of risk of illness or death to pets. Defendants accordingly breached the implied warranty of merchantability by selling such unfit pet food.

65. Plaintiff and the Class were damaged as a proximate result of Defendants' breach of warranty.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendants as follows:

13

1. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel of record to represent the Class;

2. For restitution, disgorgement and/or other equitable relief as the Court deems proper;

3. For compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendants' unlawful acts and conduct;

4. For punitive damages as a result of Defendants' grossly negligent acts and conduct;

5. For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

6. For pre-judgment and post-judgment interest;

7. For reasonable attorneys' fees and costs of suit, including expert witness fees; and

8. For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

To the full extent available, Plaintiff demands a trial by jury.

Dated: April 18, 2007

HEATHER AMRO, on behalf of herself and all others similarly situated,

By: _____
Kenneth A. Wexler
Andrae P. Reneau
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Mark J. Tamblyn
**WEXLER TORISEVA WALLACE LLP**
1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Stuart C. Talley
**KERSHAW, CUTTER, & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

*Attorneys for Plaintiff and the Class*